Arthur E. **DOWNIE**

v.

**ELECTRIC BOAT DIVISION, a division of General Dynamics Corporation, Inc., a foreign corporation.**

**Civ. No. H–80–1.**

United States District Court, D. Connecticut.

Dec. 31, 1980.

Gerald D. Wahl, Haynes & Donnelly, Detroit, Mich., and John L. Bonee, Hartford, Conn., for plaintiff.

Peter Ellis and Laurie Burt, Foley, Hoag & Eliot, Boston, Mass., for defendant.

**RULING ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

CLARIE, Chief Judge.

This case asserts various claims of breach of contract, intentional infliction of emotional distress, and violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. It is the latter allegation, embodied in Count III of the complaint, which is the subject of the motion presently before the Court. The Court finds that the plaintiff has failed to comply with the procedural filing requirements of the Age Discrimination in Employment Act (ADEA). Therefore, the defendant's motion for summary judgment, insofar as it is directed against the plaintiff's ADEA allegations, is granted. The Court further notes that the plaintiff has failed to allege properly the jurisdictional amount, a prerequisite to a diversity action. The plaintiff is allowed ten days to file an amended complaint curing this defect. *Carroll v. General Medical Co.*, 53 F.R.D. 349, 350–51 (D.C.Neb.1971). *See also* 2A Moore's Federal Practice ¶ 8.11, at 8–79 (2d ed. 1980).

*Jurisdiction*

This Court has jurisdiction, based on the allegations of the complaint, pursuant to 28 U.S.C. §§ 1331(a), 1332(a); 29 U.S.C. § 633a(c).

*Facts*

The plaintiff was employed by the defendant from 1948 to 1977. His final position with the defendant was "Procurement Management Engineering Representative." At some point in early 1977, the plaintiff's employment with the defendant was terminated. The precise date of this termination is subject to some confusion, in that the defendant claims to have informed the plaintiff of his termination on a number of separate occasions.

Frederick Whitehouse, the plaintiff's former supervisor, claims to have informed the

plaintiff, "on March 9th or 10th, 1977 that his employment with Electric Boat would be terminated. [He] further advised Mr. Downie of the decision to sever his employment in telephone conversations from Mr. Downie on or about March 21, 25, 28 and 31, 1977."[1] Second, a letter signed by Whitehouse, and dated April 15, 1977, states "This is to officially notify you that effective April 1, 1977, your employment with this Division has been terminated: 'Left Voluntarily—Personal Reasons (Reasons Unknown[2]).'" On this same topic, the plaintiff has taken varying positions. In the complaint he stated, somewhat ambiguously, that he "was terminated during April, 1977 ... [3]." In an affidavit filed with this Court, the plaintiff claimed "On April 15, 1977, I was terminated by Defendant ... [4]." Finally, in a sworn complaint filed with the Connecticut Commission on Human Rights and Opportunities, the plaintiff claimed, "On April 16th I received a letter notifying me that I was terminated effective April 1st, 1977 ... [5]."

On August 23, 1978, the plaintiff notified the Secretary of the United States Department of Labor of his intention to commence a suit against the defendant under the authority of the ADEA.

### Discussion of the Law

The defendant has claimed that the plaintiff was completely deficient in complying with the filing requirements of the ADEA, as prescribed in 29 U.S.C. § 626(d). That section provides, in part, that no civil action by an individual may be commenced under the ADEA unless a charge alleging unlawful discrimination has been filed with the Secretary of Labor within 180 days after the "alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). Alternatively, in "deferral" states (i. e. those states which have enacted age discrimination laws, 29 U.S.C. § 633(b)), the charge must be filed, at the latest, "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2).

■ The identification of the date of the "alleged unlawful practice" (in this case, the plaintiff's alleged wrongful termination) is a condition precedent to the application of sections 626(d)(1) or 626(d)(2). The Eighth Circuit has noted that the Act's "failure to define the specific time when an alleged unlawful practice occurs is tantamount to a procedural ambiguity which should be construed in favor of the complaining party." *Moses v. Falstaff Brewing Corp.*, 525 F.2d 92, 94 (8th Cir. 1975).

The plaintiff has alleged that the defendant provided him with some type of medical examination several months after his termination. In addition, he claims, at least some of these medical examinations were paid for by the defendant. Thus, argues the plaintiff, his employment status was "uncertain," until he became aware of facts supporting his cause of action. This date, he claims, was August 22, 1978, when he contacted his present counsel.

The plaintiff's view is not supported by either precedent or logic. The retention of new counsel was not the event which informed the plaintiff that he had been terminated. A number of communications from the defendant, culminating in the letter of April 15, 1977, informed the plaintiff that his employment was terminated. The 180 day period begins to run when "the employee knows, or as a reasonable person should know, that the employer has made a final decision to terminate him, and the employee ceases to render further services to the employer." *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192 (3d Cir. 1978). Uncertainty over the *reason* for the termination; uncertainty as to whether the termination will be *remedied* cannot serve to make the *act* of termination any less

---

1. Affidavit of Frederick G. Whitehouse at 2 (June 4, 1980).

2. *Id.* at Exhibit A.

3. Complaint at para. 28 (Jan. 2, 1980).

4. Affidavit of Arthur E. Downie at para. 3 (June 24, 1980).

5. Affidavit of Frederick G. Whitehouse, Exhibit B, at para. 16 (June 4, 1980).

certain. *Coke v. General Adjustment Bureau*, 22 Fair Empl.Prac.Cas. 1352, 1353 (5th Cir. 1980); *Wilkerson v. Siegfried Insurance Agency*, 22 Fair Empl.Prac.Cas. 1583, 1585 (10th Cir. 1980); *Wagner v. Sperry Univac, Division of Sperry Rand Corp.*, 458 F.Supp. 505, 512 (E.D.Pa.1978); *Davis v. RJR Foods, Inc.*, 420 F.Supp. 930, 931 n.1 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977).

The plaintiff's employment was terminated, by his own admissions, in April of 1977. Viewing the evidence in the light most favorable to the party opposing the motion, *Bishop v. Wood*, 426 U.S. 341, 347 n.11, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1975), the Court finds that the plaintiff has ceased to render services for the defendant, and received unequivocal notice of his termination, on April 16, 1977. It was on this date that the plaintiff claims to have received the April 15 termination letter which was signed by his former supervisor, Whitehouse.

April 16, 1977, was a Saturday and, therefore, the limitations periods will be deemed to have begun on the following Monday, April 18, 1977. Federal Rules of Civil Procedure 6(a). Thus, the 180-day period prescribed in 29 U.S.C. § 626(d)(1) ended on Thursday, October 13, 1977. The 300-day period prescribed in 29 U.S.C. § 626(d)(2) ended on Thursday, February 10, 1978.

The Connecticut anti-age discrimination provision is embodied in Conn.Gen.Stat. § 31–126(a)(1). No action was taken under this section until 361 days after the date of the unlawful termination. Moreover, the complaint which was filed at that time did not allege age discrimination; rather, it alleged that the plaintiff was "denied equal terms and conditions of employment" because of a claimed physical disability, "chronic obstructive pulmonary disease." This claim was dismissed by the Connecticut Commission on Human Rights and Opportunities on October 30, 1978. There is authority to the effect that failure to file a complaint pursuant to the appropriate state remedy within 180 days is necessarily fatal to any subsequent federal action. *Ciccone v. Textron, Inc.*, 22 Fair Empl.Prac.Cas. 497,

500–01 (1st Cir. 1980) (one obtains benefits of the extended filing period [300 days] *only* if he is in a deferral state *and* elects to use that state's mechanisms to attempt a conciliation of the grievance. "Any other reading would have Congress arbitrarily extending an additional 120 days in which to file the federal charge simply because the plaintiff's claim fortuitously arose in a deferral state.") *See also Ewald v. Great Atlantic & Pacific Tea Co.*, 620 F.2d 1183, 1187 (6th Cir. 1980). *But see Bean v. Crocker National Bank*, 600 F.2d 754, 759 (9th Cir. 1979).

Even without adopting the *Ciccone* reasoning, the plaintiff's claim was not timely filed in that the state filing occurred 361 days after the date of termination and the ADEA filing took place 494 days after the employment termination. Thus, the ADEA filing was prima facie untimely.

In the face of the plaintiff's untimely filing, the only remaining basis by which his ADEA claim may be preserved is, first, if the limitation period expressed in 29 U.S.C. § 626(d)(2) is subject to equitable tolling and, second, if equitable tolling is appropriate in this case.

While the Second Circuit has not passed on the question of the availability of equitable tolling, the emerging trend in other circuits is in the direction of such equitable modification. The Tenth Circuit has determined that the remedial and humanitarian purposes of the ADEA warrant that the 180-day time limitation of 29 U.S.C. § 626(d)(1), at least, should be subject to possible tolling and estoppel. *Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1260–61 (10th Cir. 1976), *aff'd by an equally divided Court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). This Court agrees with the principles expressed in *Dartt* and therefore holds that 29 U.S.C. § 626(d) is subject to equitable modification. *Franci v. Avco Corp.*, 460 F.Supp. 389, 394 (D.Conn.1978); *Postemski v. Pratt & Whitney Aircraft*, 443 F.Supp. 101, 103 (D.Conn.1977); *Davis v. RJR Foods, Inc.*, 420 F.Supp. 930, 932 (S.D.N.Y.1976); H.R. Rep.No. 950, 95th Cong., 2d Sess. 12, *reprinted in* [1978] U.S.Code Cong. & Ad. News, pp. 528, 534.

The plaintiff claims that equitable tolling is appropriate in this case, because he did not become aware of his ADEA rights until he was so informed by counsel on August 22, 1978. Ignorance of legal rights, however, does not toll a statute of limitations. *Larson v. American Wheel & Brake, Inc.*, 610 F.2d 506, 510 (8th Cir. 1979). There are, however, various grounds whereby ignorance of legal rights may be excused, and a filing limitation period consequently may be tolled. One of these equitable bases is an employer's failure to post any notice which would advise employees of the existence of the ADEA. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978). Such posting is clearly required under the law. 29 U.S.C. § 627; 29 C.F.R. § 850.10 (1979).

The memoranda submitted by counsel have dealt with the question of posting ADEA notices as an issue which could lead to equitable tolling in this case. The Court must now determine if there is a genuine issue of fact on this question; an issue which is inappropriate for decision on motion for summary judgment.

The Court notes, first, that the complaint does not allege that the defendant failed to post the required notices. The defendant has introduced three affidavits from Electric Boat employees who claim, expressly, to have seen posters relating to employee rights regarding age discrimination. The location of the posters, as described in these affidavits, is one which was frequented by the plaintiff, according to an unrebutted fourth affidavit.[6] Finally, the defendant has introduced an affidavit by the individual responsible for posting, replacing, and inspecting age discrimination notices in fourteen Electric Boat locations, including the one last described.

In opposition to these specific claims, the plaintiff has replied, simply, "I have never seen a notice posted on Defendants [sic] premises informing me of my ADEA rights. If such a notice had been posted, I would have seen it.[7]" The Court is conscious of

the need to avoid ruling on a motion for summary judgment by weighing conflicting affidavits, but it does not appear, in this case, that the affidavits truly conflict. There is no interface between them. The defendant's affidavits make specific and precise claims to the effect that the notices were posted and maintained. The plaintiff does not directly refute these claims; he merely states that he never saw any notices. It is clear that a bare assertion that he did not see the notices should not, of itself, require tolling of the filing period. *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 n.7 (3d Cir. 1978); *Mazzare v. Burroughs Corp.*, 473 F.Supp. 234, 240 (E.D.Pa. 1979). *See also Smith v. American President Lines, Ltd.*, 571 F.2d 102, 110 (2d Cir. 1978). Here, the plaintiff has offered the Court no more than bare assertions regarding what he claims not to have seen. Thus, there is no genuine issue of fact regarding the issue of posting.

The final factor extant in this case, on the issue of equitable tolling, deals with representation by counsel. The guiding principle on this point was expressed by the Second Circuit in *Smith v. American President Lines, Ltd.*, 571 F.2d 102 (2d Cir. 1978). Tolling is inappropriate when the plaintiff is represented by counsel during the statutory filing period. When one has retained counsel within the period in question, he has "access to a means of acquiring knowledge of his rights and responsibilities . . . ." *Id.* at 109. *See Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir. 1978); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978).

It is undisputed that the plaintiff was represented by at least two separate counsel during the initial 300-day period. Further, one of these counsel was retained within three months of the termination. Plaintiff's Memorandum of Law in Response to Defendant's Motion to Dismiss at 3 (June 24, 1980). The plaintiff has tried to overcome the effect of having retained counsel by arguing that equitable tolling is

---

6. Affidavit of David D. Walden at para. 5 (July 16, 1980).

7. Affidavit of Arthur D. Downie at para. 4 (June 24, 1980).

still appropriate, because "Mr. Downie's constructive knowledge imputed to him by obtaining an attorney was useless to him because these counsel focused on securing Plaintiff's sick benefits and never informed Plaintiff of any of his ADEA rights . . . [8]." This defense is without merit. Counsel are presumptively aware of whatever legal recourse may be available to their client. The client cannot avoid responsibility for the actions, or omissions, of his attorney. " 'Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other motion would be wholly inconsistent with our system of representative litigation.' " *Albano v. General Adjustment Bureau*, 478 F.Supp. 1209, 1215 (S.D. N.Y.1979) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1391-92, 8 L.Ed.2d 734 (1962)), *aff'd*, 622 F.2d 572 (2d Cir. 1980).

### Conclusion

The plaintiff failed to file within the 300-day notice provision of 29 U.S.C. § 626(d); equitable tolling of the filing period is inappropriate in this case. Therefore, the defendant's motion for summary judgment, as to Count III, is granted.

The plaintiff has failed to plead the amount in controversy required by 28 U.S.C. § 1332(a). If the plaintiff intends to pursue the remaining counts alleged in the complaint, this deficiency must be corrected. The plaintiff is hereby allowed ten (10) days from the entry of this ruling in which to file an amended complaint curing the jurisdictional defect.

So ordered.

---

**8.** Plaintiff's Memorandum in Response to Defendant's Response Memorandum (Sept. 23, 1980). *See also* Hearing on Defendant's Motion to Dismiss (July 21, 1980), where the following exchange took place:

"THE COURT: Was your client represented by counsel at this time?

PLAINTIFF'S COUNSEL: I'm about to get into that your honor. He was represented by counsel but not in connection with this particular issue. He was represented by counsel in connection with his claim for sick benefits."