Leslie GARDNER, Plaintiff,

v.

The HONEST WEIGHT FOOD COOP-ERATIVE, INC.; William Zeitlow; Maryanne Winslow; and Michael Toye, Defendants.

No. 1:99–CV–1607.

United States District Court,
N.D. New York.

May 2, 2000.

DeGraff, Foy, Holt–Harris & Kunz, LLP, Albany, NY, for plaintiff, Melody A. Mackenzie, of counsel.

Hite & Casey, P.C., Albany, NY, for defendant Honest Weight Food Cooperative, Inc., Meredith H. Savitt, of counsel.

Lefkowitz & Keefe, P.C., Albany, NY, for defendants William Zeitlow, Maryanne Winslow, and Michael Toye, Gary A. Lefkowitz, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

### I. Background

Plaintiff brings the instant action alleging, *inter alia,* that Defendants Honest Weight Food Cooperative, Inc. ("HWFC") and William Zeitlow ("Zeitlow"), Maryanne Winslow ("Winslow") and Michael Toye ("Toye") (collectively "Defendants") unlawfully discriminated against her on the basis of her Jewish ethnicity, religion and gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Plaintiff also asserts numerous pendent state law claims against Defendants for employment-related discrimination in violation of N.Y.Exec.Law § 296 *et seq.* and for slander and defamation. *See generally* Amended Compl. at ¶¶ 116–219.

Defendants HWFC and Zeitlow, Winslow and Toye separately move to dismiss the federal causes of action and state-based defamation claim pursuant to Fed. R.Civ.P. 12(b)(1), (6).[1] Defendants also move the Court to decline supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c), over Plaintiff's state-based causes of action under N.Y.Exec.Law § 296 *et seq.* The Court assumes familiarity with its two prior decisions in this matter, which detail the procedural and factual background surrounding the instant dispute. *See Gardner v. The Honest Weight Food Coop.,* 99–CV–1607 (N.D.N.Y. Mar. 30, 2000) (denial of Defendant's motion for sanctions); *Gardner v. The Honest Weight Food Coop.,* 99–CV–1607 (N.D.N.Y. Mar. 2, 2000) (denial of Defendants' motions to dismiss).

### I. Discussion

#### A. Conversion to Summary Judgment

In the present motion, both parties submitted materials, e.g., affidavits and other documentary evidence, outside the pleadings.[2] Plaintiff was on notice from Defen-

---

1. Although Defendants Zeitlow, Winslow and Toye make a separate motion to dismiss the Amended Complaint, they "expressly adopt and incorporate by reference ... the papers submitted [by HWFC]" in support of HWFC's motion to dismiss the Amended Complaint. Affidavit of Gary A. Lefkowitz, Esq. at ¶ 3.

2. Because Defendants seek to dismiss Plaintiff's federal causes of action for lack of subject matter jurisdiction pursuant to Fed. R.Civ P. 12(b)(1), the Court will briefly discuss the "procedural path for assessing whether [the ninety-day requirement in 42 U.S.C. § 2000e–5(f)(1) ] has been satisfied." *Espinoza v. Missouri Pac. R.R. Co.,* 754 F.2d 1247, 1249 n. 1 (5th Cir.1985). The requirement that a claimant commence an action within ninety days of receipt of the right-to-sue letter is not treated as a jurisdictional prerequisite, but as a statute of limitations that is subject to tolling and waiver. *See id.; Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984) (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Accordingly, motions to dismiss a Title VII complaint for failure to commence the action within ninety days of receipt of the Right–To–Sue letter should not be phrased in terms of subject matter jurisdiction. *See Espinoza,* 754 F.2d at 1249 n. 1; *Casamento v. New York Stock Exch., Inc.,* 1995 WL 373494, at *1 n. 1 (S.D.N.Y. June 22, 1995). In the present matter, however, this distinction is not significant as the Court has converted Defendants' mo-

dants' motions that dismissal of her Title VII claims was sought based on Plaintiff's failure to timely file her federal complaint within the ninety day filing requirement. In connection with Defendants' motions, both parties submitted sworn affidavits. *See, e.g.,* Affidavit of Elizabeth Cadle, Director of the Buffalo Local Office of the EEOC ("Cadle Aff.") (Docket No. 41); Affidavit of Earl Moyer ("Moyer Aff.") (Docket No. 45 at Ex. A); Affidavit of Leslie Gardner ("Gardner Aff.") (Docket No. 46). Accordingly, both parties were provided "sufficient notice that summary judgment was possible and ample opportunity to submit supporting affidavits and evidence." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). Because both parties had a full and fair opportunity to present and, in fact, have presented, materials pertinent to a Rule 56 motion, the Court will treat Defendants' pending motions pursuant to Rule 56. *See* FED. R.CIV.P. 12(b); *Krijn v. Pogue Simone Real Estate Co.,* 896 F.2d 687, 689 (2d Cir.1990) (stating that the relevant inquiry in deciding whether to convert a motion to dismiss into a motion for summary judgment is "whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.") (internal quotations omitted); *M.J.M. Exhibitors, Inc. v. Stern,* 770 F.2d 288, 295 (2d Cir.1985) ("A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss. Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had ade-

quate notice that the motion to dismiss would be converted.") (citations omitted), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *Mate v. New York State Dep't of Labor,* 1998 WL 770554, at *1 (S.D.N.Y. Nov.2, 1998) ("In view of the fact that both parties have submitted material outside the pleadings, and [the Court] hav[ing] considered the submission of the non-moving plaintiff, it is permissible to treat [defendant's] motion at least in part as a motion for summary judgment."); *Casamento v. New York Stock Exch., Inc.,* 1995 WL 373494, at *1 (S.D.N.Y. June 22, 1995). In deciding the instant motions, the Court will apply the well-settled standards applicable to motions for summary judgment that have been set forth in prior decisions by this Court. *See Dyke v. McCleave,* 79 F.Supp.2d 98, 102–03 (N.D.N.Y.2000); *Frink Am., Inc. v. Champion Road Mach. Ltd.,* 62 F.Supp.2d 679, 681–82 (N.D.N.Y.1999); *Emma v. Schenectady City Sch. Dist.,* 28 F.Supp.2d 711, 717–18 (N.D.N.Y.1998), *aff'd,* 199 F.3d 1322 (1999) (Table). However, because Defendants' arguments with respect to Plaintiff's defamation claim challenge, in large part, the sufficiency of the allegations set forth in the Amended Complaint, *see* Def. HWFC Mem. of Law at 11–14, the Court will treat that portion of Defendants' motions to dismiss as ones pursuant to FED.R.CIV.P. 12(b)(6). *See, e.q., Finley v. Illinois Dep't of Pub. Aid,* 1998 WL 26156, at *2–*3 (N.D.Ill. Jan.12, 1998).

## B. Timeliness of Plaintiff's Title VII Claims

Defendants argue that Plaintiff's federal causes of action under Title VII (First, Second, Third, Fifth, and Sixth Causes of Action in the Amended Complaint) should be dismissed because Plaintiff failed to timely commence the instant action within ninety days of receipt of her Right–To–Sue letter as required under 42 U.S.C. § 2000e–5(f)(1).

tions to ones for summary judgment under FED.R.CIV.P. 56 and, therefore, properly considered the affidavits and other documentary evidence submitted by the parties.

■ "In order to be timely, a claim under Title VII ... must be filed within 90 days of the claimant's receipt of a right-to-sue letter." *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam). Thus, the ninety day requirement functions as a statutory precondition to bringing suit in federal court. *See* 42 U.S.C. § 2000e–5(f)(1); *Rasmussen v. Sigma Corp. of Am.*, 27 F.Supp.2d 388, 391 (E.D.N.Y.1998). The requirement is "treated like a statute of limitations," *Rasmussen*, 27 F.Supp.2d at 391, and "[f]ailure to comply with this time requirement will result in dismissal of the complaint." *Banks v. Metro–North Commuter R.R.*, 1998 WL 312237, at *3 (S.D.N.Y. June 12, 1998) (quotations omitted); *see also Williams v. Manhattan East Suite Hotels*, 1999 WL 212690, at *2 (S.D.N.Y. Apr.12, 1999). The ninety day period begins to run from the date the *claimant* receives the Right–To–Sue letter "at the address supplied to the EEOC by the claimant." [3] *Espinoza*, 754 F.2d at 1249; *see also Rasmussen*, 27 F.Supp.2d at 392–93; *Casamento*, 1995 WL 373494, at *2. "While the 90–day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir.1984) (internal quotation omitted); *see also Crawford–Mulley v. Corning, Inc.*, 77 F.Supp.2d 366, 368 (W.D.N.Y.1999) (citations omitted); *Rasmussen*, 27 F.Supp.2d at 393; *Connell v. J.P. Morgan Inv. Management, Inc.*, 1994 WL 132148, at *2 (S.D.N.Y. Apr.12, 1994).

■ A presumption exists that an EEOC notice is received "three days after its mailing" and that "a notice provided by a government agency has been mailed on the date shown on the notice." *Sherlock*, 84 F.3d at 525–26 (citing *Baldwin County*, 466 U.S. at 148 and n. 1, 104 S.Ct. 1723); *see also* FED.R.CIV.P. 6(e) (West 2000) ("Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period."). This presumption, however, may be rebutted by sworn testimony or other admissible evidence from which it could reasonably be inferred that it took longer than three days for the letter to reach the claimant by mail. *See Sherlock*, 84 F.3d at 526; *see also Williams*, 1999 WL 212690, at *2 ("Ordinarily, the 90–day filing period commences when the plaintiff would be expected to receive the right-to-sue letter, and there is a presumption that a [right-to-sue] letter properly mailed is not only received by the addressee, but also that it is received in the due course of the mails.") (internal quotations omitted and brackets in original).

■ In the present case, Plaintiff's Right–To–Sue letter is dated June 30, 1999.[4] *See* Amended Compl. at Ex. C. It is the practice of the EEOC to date-stamp the Right–To–Sue letter on the date of issuance and mail the letter to the claimant on that same date. *See* Cadle Aff. at ¶ 3. Thus, a Right–To–Sue letter dated June 30, 1999 was presumably mailed on June 30, 1999. *See id.; Sherlock*, 84 F.3d at 526. Allowing for a three-day mailing presumption, Plaintiff should have received her Right–To–Sue letter on Saturday, July

---

3. The Court notes that the Right–To–Sue letter at issue in the present case was addressed to Plaintiff at her Nassau, New York address. *See* Amended Compl. at Ex. C.

4. On that same day, the EEOC also issued Plaintiff a certificate, pursuant to 29 C.F.R.

§ 1601.28(a)(2), stating that the EEOC would be "unable to complete its administrative processing of the [Plaintiff's] charge[ ] within 180 days from the filing of the charge." Amended Compl. at Ex. C.

3, 1999, a regular mail day. In such a scenario, Plaintiff was, therefore, required to file her federal complaint no later than Friday, October 1, 1999, ninety days later. The Right–To–Sue letter issued to Plaintiff clearly stated that she must file her federal lawsuit within ninety days of receiving the notice to avoid losing her right to sue based on her EEOC charge. *See* Amended Compl. at Ex. C. The present action, however, was commenced on October 4, 1999, the date Plaintiff filed her initial federal complaint. *See* Compl. (Docket No. 1).

To rebut the three-day presumption, Plaintiff submits her own affidavit stating, in pertinent part, that "I am confident that I received my right to sue notification from the EEOC on July 6, 1999 following the July 4, 1999 weekend." Gardner Aff. at ¶ 2. If Plaintiff did in fact receive her Right–To–Sue notice on July 6, 1999, her federal complaint would have been filed within ninety days of receipt of that notice and, thus, be timely. Plaintiff attempts to substantiate her claim by providing a copy of the mailing envelope, which she alleges bears a June 31, 1999 metered stamp date. *See* Amended Compl. at Ex. D; Affidavit in Opp'n to Def. Motion for Sanctions, at Ex. E. Plaintiff's counsel also submitted an affidavit stating that she, too, received the Right–To–Sue letter on July 6, 1999.

The sworn affidavit submitted by Plaintiff is sufficient to create a genuine issue of fact about whether she received the Right–To–Sue letter on July 6, 1999 and, therefore, adequately rebuts the presumption set forth in *Sherlock* and FED.R.CIV.P. 6(e). As the Second Circuit stated in *Sherlock*:

> If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer

than three days to reach her by mail, the initial presumption is not dispositive. 84 F.3d at 526 (emphasis added).

Other courts have similarly permitted a party to rebut a general presumption of receipt with sworn testimony. *See, e.g., Hogarth v. New York City Health and Hosps. Corp.,* 2000 WL 375242, at *4 (S.D.N.Y. Apr.12, 2000) ("[T]he presumption of delivery can be successfully rebutted with a sworn affidavit giving a detailed description of the mail procedures followed at a company for all incoming mail supporting the conclusion that the mail was never received."); *Wiggins v. Avco Fin. Servs.,* 62 F.Supp.2d 90, 99 (D.D.C.1999); *Smith v. Local Union 28 Sheet Metal Workers,* 877 F.Supp. 165, 172 (S.D.N.Y. 1995), *aff'd,* 100 F.3d 943 (2d Cir.) (Table), *cert. denied,* 519 U.S. 832, 117 S.Ct. 101, 136 L.Ed.2d 55 (1996); *Vine v. Bowen,* 1988 WL 35595, at *1 (N.D.Ill. Apr.8, 1988).

Based on the specific circumstances before the Court, namely, where a Plaintiff unequivocally asserts that she is "confident" that she received her EEOC notice on a certain date, the Court finds there to be a genuine issue of material fact regarding when Plaintiff received her Right–To–Sue notice, which is best left for the jury, rather than this Court, to resolve. Accordingly, Defendants' motions for summary judgment with respect to Plaintiff's First, Second, Third, Fifth, and Sixth Causes of Action must be denied.[5]

### C. Section 1981 Claim

In the present case, Plaintiff bases her section 1981 claim on the conditions of her employment rather than because of her termination. Defendants move to dismiss Plaintiff's claim brought pursuant to 42 U.S.C. § 1981 on the ground that Plaintiff is an at-will employee and, therefore, she

---

5. Having concluded that Plaintiff's sworn affidavit is sufficient to create a factual dispute precluding summary judgment with respect to Plaintiff's Title VII claims, the Court need not conclusively address, for the purposes of the

instant motions, Plaintiff's arguments regarding: (1) when her attorney received the Right–To–Sue letter and (2) whether the letter was meter stamped June 30th or mistakenly stamped June 31st, 1999.

lacks an underlying contractual relationship with Defendants upon which such a claim can be based. Defendants do not, however, address the elements of Plaintiff's section 1981 claim.

Section 1981, provides, in pertinent part, that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). "For purposes of protection under [section] 1981, people of Jewish heritage are considered a distinct race." *Gutman v. Tico Ins. Co.*, 1998 WL 306502, at *3 (E.D.Pa. June 9, 1998) (citations omitted); *see also St. Francis College v. Al–Khazraji*, 481 U.S. 604, 612, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 291 (2d Cir.1992); *United States v. Somerstein*, 959 F.Supp. 592, 595 (E.D.N.Y.1997).

Notwithstanding the parties' arguments regarding whether Plaintiff is an at-will employee, the Court notes there is considerable dispute within the district courts of this Circuit about whether an at-will employee may bring suit under section 1981. *See, e.g., Johnson v. City of New York*, 2000 WL 377514, at *2 (S.D.N.Y. Apr.12, 2000) (collecting cases); *Mungin v. Macklowe*, 2000 WL 325694, at *1–*2 (S.D.N.Y. Mar.28, 2000) (collecting cases); *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 675–76 (E.D.N.Y.1997) (at-will employee cannot establish contractual relationship necessary to sustain a section 1981 claim), *aff'd*, 162 F.3d 1148 (2d Cir. 1998) (Unpublished Table Decision). There also appears to be some disagreement among the circuit courts of appeal that have addressed this issue. *Compare Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049–52 (5th

Cir.1998) (employment at-will may constitute a contractual relationship under section 1981 under Texas law) and *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018–19 (4th Cir.1999) (employment at-will may constitute a contractual relationship under section 1981 under Maryland law) *with Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1034–35 (7th Cir.1998) (noting, in dicta, that under Illinois law an employee at-will has no contractual rights to support a claim under section 1981).

Although the Second Circuit has not yet definitively weighed in on this dispute, it appears that the exact issue is currently being considered by that Court. *See Lauture v. IBM*, 98–CV–4882 (S.D.N.Y. May 25, 1999), *appeal docketed*, 99–7732 (2d Cir. June 21, 1999). In light of the substantial disagreement among the district courts within this Circuit on this issue, and the fact that the Second Circuit is likely to resolve this dispute in the near future, the Court believes it is wiser at this time to deny Defendants' motions for summary judgment on Plaintiff's section 1981 claim (Seventh Cause of Action) pending that decision. Defendants may, of course, move to dismiss Plaintiff's section 1981 claim once the Second Circuit issues its decision in Lauture.[6]

### D. State Law Claims Under N.Y.Exec. Law § 296

Defendants also move to dismiss Plaintiff's Fourth and Seventh Causes of Action alleging retaliation and race discrimination, respectively, under N.Y.Exec.Law § 296.[7] Specifically, Defendants request that the Court decline supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3), over Plaintiff's state claims "[i]f the Court dismisses ... plaintiff's federal claims." Def. HWFC Mem. of Law at 10.

**6.** Because Plaintiff's Title VII and section 1981 claims are based, in part, on the same allegations and events surrounding Plaintiff's employment at HWFC, permitting Plaintiff's section 1981 claim to go forward at this time will not likely create additional discovery burdens on the parties.

**7.** In her Amended Complaint, Plaintiff labels both her section 1981 claim and race discrimination claim under N.Y.Exec.Law § 296 as her Seventh Causes of Action. *See* Amended Compl. at ¶¶ 173–96.

Because the Court denied Defendants' motions to dismiss Plaintiff's Title VII claims, *see supra,* Defendants' motions to dismiss Plaintiff's state claims under N.Y.Exec.Law § 296 on jurisdictional grounds is denied.

### E. Defamation Claim

Plaintiff's Ninth Cause of Action brings a defamation claim based on statements allegedly made by Defendants Zeitlow, Winslow and Toye that included, *inter alia,* "a campaign to falsely portray the plaintiff as an individual who discriminated against African–Americans," Amended Compl. at ¶ 208, and inferring that Plaintiff was terminated "due to racially discriminatory conduct." *See id.* at ¶ 210; *see, e.g., Rivera v. Greenberg,* 243 A.D.2d 697, 663 N.Y.S.2d 628, 629 (2d Dep't 1997); *Scott v. Cooper,* 226 A.D.2d 360, 640 N.Y.S.2d 248, 249 (2d Dep't 1996).

 "There are, generally speaking, four elements necessary to establish a prima facie case of slander: (1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, and (4) injury to the plaintiff." *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *see also Mobile Data Shred, Inc. v. United Bank of Switzerland,* 2000 WL 351516, at *6 (S.D.N.Y. Apr.5, 2000); *Gillespie v. AST Sportswear, Inc.,* 1998 WL 289681, at *2 (S.D.N.Y. June 4, 1998). To comport with the First Amendment's guarantee of the right to free speech, a plaintiff alleging defamation must also prove the requisite degree of fault, which depends on the status of the alleged libeled party. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 346–48, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

 "In evaluating whether a cause of action for defamation is successfully pleaded, [t]he words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Dillon v. City of New York,* 261 A.D.2d 34, 704 N.Y.S.2d 1, *5 (1st Dep't Dec.14, 1999) (bracket in original). Accordingly, "allegations[ ] premised upon speculation and conjecture," *Buffolino v. Long Island Sav. Bank, FSB,* 126 A.D.2d 508, 510 N.Y.S.2d 628, 631 (2d Dep't 1987), as well as "[l]oose, figurative or hyperbolic statements, even if deprecating the plaintiff," *Dillon,* 704 N.Y.S.2d at *5; *see also Miss Am. Petite, Inc. v. Fox Broad. Co.,* 262 A.D.2d 33, 690 N.Y.S.2d 592, 592 (1st Dep't 1999), do not constitute actionable defamation. "When, however, the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable." *Steinhilber v. Alphonse,* 68 N.Y.2d 283, 289–90, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986) (citations omitted); *see also Ferris v. Loyal Order of Moose Oneonta Lodge No. 465,* 259 A.D.2d 914, 686 N.Y.S.2d 884, 885 (3d Dep't 1999), *leave to appeal dismissed by* 94 N.Y.2d 838, 702 N.Y.S.2d 586, 724 N.E.2d 378 (1999) (Table), *reargument denied by* 94 N.Y.2d 873, 705 N.Y.S.2d 2, 726 N.E.2d 479 (2000).

 In seeking to dismiss Plaintiff's defamation claim, Defendants advance the following grounds: (1) the alleged statements made by Zeitlow, Winslow and Toye were not made in the course of their employment at HWFC; (2) the alleged statements were not published to third parties; (3) Plaintiff fails to allege that the statements damaged her reputation; (4) the alleged statements lack the requisite specificity to place Defendants on notice of the bases for Plaintiff's defamation claim; and (5) the alleged statements are barred by the applicable statute of limitations. *See* Def. HWFC Mem. of Law at 11–14. The Court will address each ground *seriatim.*

Plaintiff contends that the alleged defamatory statements were made by HWFC employees in the course of their employment. Notwithstanding Defen-

dants' conclusory statement to the contrary, the Amended Complaint alleges that Defendants' statements were made during, and in connection with, Plaintiff's employment at HWFC. Under these circumstances, as alleged in the Amended Complaint, Plaintiff sufficiently alleges facts under which HWFC can be liable for tortious statements made by Zeitlow, Winslow and Toye. *See Kavanaugh v. Nussbaum*, 71 N.Y.2d 535, 546, 528 N.Y.S.2d 8, 523 N.E.2d 284 (1988); *Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 377, 502 N.Y.S.2d 965, 494 N.E.2d 70 (1986) ("Consonant with risk allocation theories, liability for compensatory damages is properly placed on an innocent employer for slander by its agents committed in the course of employment.") (citations omitted). Second, Plaintiff avers with particularity the alleged statements made by Defendants Zeitlow, Winslow and Toye and to whom such statements were published. *See* Amended Compl. at ¶ 213(a)–(g). Moreover, contrary to Defendants' contentions, Plaintiff alleges that the challenged statements were published to third parties, *see* Amended Compl. at ¶ 213(a)–(g), were false, *see id.* at ¶¶ 210, 215, and damaged her reputation and caused emotional distress, *see id.* at ¶¶ 211, 214, 216, 219. Lastly, the alleged defamatory statements set forth in the Amended Complaint relate to events occurring within one year prior to the filing of the federal complaint.[8] *See, e.g.*, Amended Compl. at ¶ 213(c), (d) (statement made and letters solicited after Plaintiff was terminated in December 1998); ¶ 213(e) (statements made at February 1999 membership meeting); *see also* Amended Compl. at Ex. F (HWFC panel decision reinstating Plaintiff). Accordingly, Defendants' motions to dismiss Plaintiff's defamation claim are denied.

---

**8.** In seeking to dismiss Plaintiff's defamation claim, Defendants argue that two letters written by HWFC employee Janice Eatmon dated May 5, 1998 and September 30, 1998 are "time-barred under the one-year statute of limitations governing defamation claims." Def. HWFC Mem. of Law at 13 (citing N.Y.C.P.L.R. § 215(3)); *see also Julian v. Carroll*, 704 N.Y.S.2d 654, 655 (2d Dep't 2000); *Spinale v. Guest*, 704 N.Y.S.2d 46, 47 (1st Dep't 2000). These letters, however, are not included as a basis for Plaintiff's defamation claim in the Amended Complaint. *See* Amended Compl. at ¶ 213(a)–(g).

## III. Conclusion

For all of the foregoing reasons, Defendants HWFC, William Zeitlow, Maryanne Winslow and Michael Toye's separate motions to dismiss the Amended Complaint are **DENIED**.

**IT IS SO ORDERED.**